**MILLER et al. v. SKANES.    (No. 8364.)**

(Court of Civil Appeals of Texas. Galveston. May 17, 1923. Rehearing Denied June 7, 1923.)

1. **Vendor and purchaser ⬳261(4)—Purchaser of vendor's lien notes not innocent purchaser if he knew they had been paid.**

One could not be innocent purchaser in good faith of notes secured by vendor's lien though he paid value, where he purchased with knowledge that they had been paid or with notice of any other valid defense.

2. **Appeal and error ⬳930(3)—Presumed that court found notes had been paid in case submitted on special issues.**

Where, in response to special issues, jury found that holder of vendor's lien notes had collected insurance sufficient to pay them, and that transferee knew that fact, and pleadings

and evidence warranted finding that they were thereby paid, it will be presumed, if essential to support judgment, that court found they had been paid.

3. **Husband and wife ⬳193—Mortgages ⬳79—Deed of trust obtained by duress without husband joining void in hands of one exercising duress and his alter ego.**

Where note and accompanying deed of trust were obtained from defendant by W. under duress, and without joinder of defendant's husband, and plaintiff, who purchased at trustee's sale, was W.'s alter ego, and paid nothing for her deed, the deed of trust was void as to both plaintiff and W.

4. **Trial ⬳350(4)—Special issues as to whether holder of vendor's lien had collected insurance and whether assignee knew thereof held properly submitted.**

Where it was not controverted that vendor's lien notes were extinguished if holder had collected insurance, special issues as to whether he had collected it and whether assignee of notes knew that fact when he took his assignment were properly submitted in suit between maker and the assignee and his alter ego.

5. **Appeal and error ⬳1062(5)—Unnecessary submission of special issue as to question not in dispute held harmless.**

Though it was practically undisputed that holder of vendor's lien notes had collected insurance sufficient to discharge them before assignment of the notes, unnecessary submission of special issue as to such collection was harmless to assignee and one claiming under him.

6. **Trial ⬳352(5)—Special issue as to duress in execution of instrument held not improper as suggesting that act of inducement was committed.**

Special issue as to whether execution of deed of trust was brought about by acts and conduct of W. which destroyed free agency of the maker was not improper as suggesting that W. did commit some act inducing execution of the deed, where jury was directed to answer "Yes" or "No" as they found the fact to be.

7. **Husband and wife ⬳221 — Case in trespass to try title not made out when defendant's husband not joined.**

In trespass to try title, plaintiff failed to make out case where defendant was proved to be a married woman, but her husband was not joined.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by Bettie W. Miller against Henrietta Skanes, who made W. B. Washam a party. Judgment for defendant Skanes, and plaintiff and Washam appeal. Affirmed.

W. P. Neblett and A. R. & W. P. Hamblen, all of Houston, for appellants.

H. E. Kahn and J. M. Hawkins, both of Houston, for appellee.

GRAVES, J. Bettie W. Miller, a widow, sued Henrietta Skanes, alleging her also to

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

be a widow, in trespass to try title for lot 8 in block 2 of Orgen subdivision in 10-acre lot No. 24 of the J. S. Holman survey, lying in the city of Houston, Harris county, on the south side of Buffalo bayou.

In answering defendant Skanes first filed a plea of coverture, averring that she was then and had been since 1903 a married woman, the wife of one Milton Skanes, praying for a dismissal because of plaintiffs' failure to make her husband a party; subsequently she filed an amended answer making W. B. Washam a party, and alleging, in substance, that she bought the property sued for in 1908 from the Orgen Realty & Investment Company, paying part cash, and for the balance of the purchase money gave it 120 vendor's lien notes for the sum of $14.80 each, bearing interest only from maturity, and payable successively one each month thereafter until all were due, at the same time procuring and delivering to her vendor in further security for the notes a fire insurance policy on the improvements on the property in the sum of $950, with a loss clause payable to the Orgen Company; that she was uneducated, knew nothing of business transactions, but relied wholly upon her vendor, and paid to it as they fell due the first 69 of this series of 120 notes, and that in 1910 her house on the property burned down, the $950 insurance was paid to the Orgen Company, and it, together with her own payment of the 69 notes, fully paid the entire series of 120 purchase-money notes, and extinguished the vendor's lien they carried, which payment and discharge she declared upon against both Mrs. Miller and Washam, further charging in detail that they were each bound thereby because their interests, whatever they were, were acquired with knowledge thereof, or at least such notice as legally amounted to the same thing. She also alleged specifically that the assignment of 52 of the 120 notes she so gave it, together with the vendor's lien securing them, executed by the Orgen Realty & Investment Company to W. B. Washam on August 7, 1913, was then accepted by him with full knowledge of their prior payment and discharge by her; that the purported assignment of the same notes and lien from W. B. Washam to W. J. Armstrong, of date April 17, 1917, as well as the purported deed of trust upon the property executed by herself on the same date to A. A. Brush as trustee for W. J. Armstrong, and the subsequent assignment by Armstrong to Mrs. Miller of all his interests under these instruments, were each and all without consideration flowing to any of the other persons named, but were fraudulent efforts upon the part of Washam, who was at all such times the real holder of the notes forming the subject-matter of such transfers, to so manipulate them in his own interest that he could by the use of such other named persons as a medium, under the pretense that they were

innocent purchasers, finally defeat defendant's title and secure the property himself. She added that Washam had induced her to execute the deed of trust to A. A. Brush by the use of force, threats, and fraud, that it did not represent her voluntary act, and concluded with the charge that Mrs. Miller was merely the alter ego in these transactions for Washam, who was her brother, or, in any event, that she either knew or was charged with knowledge of all his previously alleged acts with reference to them, and was bound thereby. She prayed for judgment against both Mrs. Miller and Washam, or, in event the former was held to be an innocent purchaser thereof, that she recover its value against the latter.

In supplemental pleadings Mrs. Miller controverted the defendant Skanes' plea of coverture, averring that she had in executing all the various instruments involved represented herself to be a feme sole, had so held herself out, and was in consequence estopped to now claim otherwise, further declaring that she, herself, was an innocent purchaser of the property for value without notice of the matters set up by defendant.

W. B. Washam, in response to the defendant's so pleading over against him, came in with a general demurrer, especially charged that defendant's cause of action against him was barred by the 2 and 4 years statutes of limitation, pleaded not guilty of the wrongs and trespasses set up against him, denied generally all the allegations of defendant's answer, and finally disclaimed any interest in the subject-matter of the suit, saying he sold the notes referred to by defendant Skanes to W. J. Armstrong by written assignment of date April 17, 1917, since which date he had neither owned any interest in them nor the property for which they were given.

The cause was submitted by the court to a jury upon special issues, which, together with the jury's answers thereto, are as follows:

"No. 1. Did the Orgen Realty & Investment Company collect a fire insurance policy of $750 on the property in question prior to August 7, 1913? Answer: Yes.

"No. 2. If you have answered the foregoing issue in the affirmative, and only in that event, you will answer this question: Did W. B. Washam know at the time of the transfer of the vendor's lien notes by the Orgen Realty & Investment Company to him on August 7, 1913, that said company had collected the insurance money inquired about above? Answer: Yes.

"No. 3. If you have answered special issue No. 1 in the affirmative, and only in that event, you will answer this question: Was W. B. Washam on August 7, 1913, in possession of such facts with reference to the collection of said insurance money as would have put an ordinarily prudent person upon inquiry in regard to same? (No answer.)

"No. 4. If you have answered the foregoing issue in the affirmative, and only in that event, you will answer this question: Would the inquiry mentioned above, if pursued with ordinary diligence, have led to knowledge of the collection of the insurance money, if you have found same was collected. (No answer.)

"No. 5. Was Henrietta Skanes married to one Milton Skanes in the year 1900? Answer: Yes.

"No. 6. If you have answered the foregoing issue in the affirmative, and only in that event, you will answer this question: At the time of the execution of the several notes and instruments in evidence by Henrietta Skanes to W. B. Washam and W. J. Armstrong, had she, the said Henrietta Skanes, been permanently abandoned by her husband? Answer: No.

"No. 7. Was the execution of the deed of trust to A. A. Brush, trustee, dated July 31, 1917, by Henrietta Skanes, brought about by acts and conduct of the defendant W. B. Washam which destroyed the free agency of the defendant, Henrietta Skanes? Answer: Yes."

On the coming in of the verdict judgment was entered that plaintiff take nothing by reason of her suit, and that defendant Skanes recover of both her and W. B. Washam the title and possession of the land involved, Mrs. Miller and Washam present this appeal.

Appellants do not contend that the evidence was insufficient to support the findings on any of these issues, but they complain, first, through assignments of error 1 to 5 inclusive, that a requested peremptory instruction in their favor should have been given, and, second, under assignments 6 to 9, inclusive, that the court erred in submitting issues 1, 2, 3, and 7 to the jury. The tenth assignment is not considered, because multifarious and otherwise violative of the rules.

[1, 2] We are unable to appreciate the force of the argument that a peremptory instruction for appellants should have been given; while, as stated, no attack is made upon the jury's findings as lacking support in the evidence, it is yet insisted under these assignments that appellants were innocent purchasers for value without notice either that the 52 $14.80 notes assigned to Washam by the Orgen Realty & Investment Company had been previously paid by the appellee, or that there was any defense against the subsequent $479 note and the purported deed of trust securing it given by the appellee in favor of Armstrong. This could not be true if there was enough evidence to raise the issues so submitted and support the jury's answers thereto, as undoubtedly was the case. One cannot be an innocent purchaser in good faith of a negotiable instrument even though he has paid value where he purchases with knowledge that it has already been paid, or where he has knowledge or notice of any other valid defense in the maker against it. It is quite true here that the court was not requested to and did not specifically inquire of the jury whether the 52 small notes appellant Wash-am took an assignment of from the Orgen Company had been paid, but it was wholly unnecessary, since appellee's pleadings so charged, and the proof was at least sufficient to support a finding that they had been, and that Washam knew that fact, if that concern had within his knowledge collected and appropriated the $750 of insurance appellee carried on the property. If, therefore, the fact of such payment with Washam's knowledge be regarded as essential to support the judgment, a finding to that effect will be presumed to have been made by the court, the evidence justifying if it did not compel the finding that the $750 of insurance money, together with what she had otherwise paid, fully extinguished all the 120 notes appellee had originally given her vendor, the Orgen Company. Accordingly the argument that the judgment could not stand without a finding that the alleged debts of appellants had been paid falls.

[3] As concerns the $479 note and its accompanying deed of trust to Brush, it further goes without saying that, if these were executed by the appellee under duress, and without the joinder of her husband, as findings 6 and 7 import, they could neither support appellants' claims of innocent purchase nor furnish the basis for any title in either of them. They assert that Mrs. Miller acquired the legal title to the land, unclouded by the equitable right therein set up by the appellee, as a result of her having been an innocent purchaser of it for value at a sale thereof by the trustee under the Brush deed of trust; but the undisputed proof showed—because of which, evidently, the court did not submit that matter to the jury—that the appellee's averment that she was merely the alter ego of Washam and paid nothing for her deed, was true, so at last all roads lead to Rome (Washam), and hence the finding that his acts destroyed the free agency of appellee in the execution of the trust deed nullified that document as to both appellants. In a word, both the pleadings and the evidence having raised the issue as to the validity against the appellee of the claims under which appellants held, the court did not err in refusing to peremptorily instruct in their favor. Likewise we see no merit in the view that the issues challenged, 1, 2, 3, and 7, should not have gone to the jury. No. 3 was not answered, and is eliminated.

[4, 5] It is said that Nos. 1 and 2 were immaterial, because no question was raised as to the Orgen Company having collected the insurance, and answers thereto could not affect appellant Washam, as he was shown to be an innocent holder of the notes assigned to him, and there was no evidence that they had ever been paid.

What has been said concerning the preceding assignments is also, to a degree, at least, applicable here. The purpose of these

inquiries was to determine whether or not Washam was an innocent purchaser of the notes he held, and it but begs the question to say they could not be asked because he was otherwise shown to be such. As before stated, it was not controverted that the notes he got were extinguished if his assignor collected appellee's $750 insurance; hence it certainly became material to further determine whether it did so collect, and, if so, whether Washam knew that fact when he took his assignment. It is true that the evidence was practically undisputed that such collection had been made, and that feature might have been withheld from the jury; but its unnecessary submission, of which appellants did not complain at the time, could in no way have harmed them.

[6] The complaint against the seventh issue is that it suggested to the jury that Washam did commit some act which induced Henrietta Skanes to execute the trust deed, whereas the evidence showed he was not at the time present, etc. There is nothing in this objection. In framing the inquiry, the court directed the jury to answer "Yes" or "No," as they found the fact to be.

So much for the assignments as presented.

If the evidence be looked to, it is disclosed that ample testimony was offered supporting all the findings made. While, as before indicated, the verdict thus reached settled the controversy adversely to appellants, it may be added that on features lying back of the particular issues submitted, and of which they were the complement, the undisputed proof showed that Henrietta Skanes had occupied this property as her homestead under a recorded deed to her continuously, barring a few days at one time during some repairing, from the time she bought it in 1908 until she was ousted in 1920 through some court process issued at the instance of appellants, and that Washam was at all times familiar with such claim of title and possession; further, that he was his sister's agent, and neither she nor Armstrong paid anything for the transfers to them, he, himself, testifying in this connection:

"Betty W. Miller is my sister, and I am her authorized agent. At one time I suppose I was the holder of some notes executed by Henrietta Skanes. I transferred these notes to W. J. Armstrong. He did not pay me anything for those notes; it was just a transfer. Subsequent to that time I had him convey these notes to my sister, and she did not pay anything for the transfer. * * * The reason I transferred these notes to my sister was because I believed that if somebody else held the notes and the house was fixed she would pay them; she would not pay me, and that is why I transferred the paper and furnished Mr. Armstrong with the money to pay it off."

Mrs. Miller did not see fit to deny these statements.

In all these circumstances, obviously, the mere fact that Washam may have paid the Orgen Company something for its transfer to him would be immaterial, and could not constitute him an innocent purchaser. 3 Ruling Case Law, p. 1032, par. 239, and page 1042, par. 247.

[7] Upon at least two general grounds, therefore, appellant Miller failed to make out a case as against appellee, and was not entitled to recover the land: (1) The validity of her asserted title was not shown; (2) she sued one who was proven to be a married woman without joining her husband.

The trial court's judgment has been affirmed.

Affirmed.